699 So.2d 657 (1997)
THE FLORIDA BAR, Complainant,
v.
Roy L. BEACH, Respondent.
No. 86952.
Supreme Court of Florida.
July 17, 1997.
Rehearing Denied September 24, 1997.
*658 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and Rose Ann Digangi-Schneider and James W. Keeter, Bar Counsel, Orlando, for Complainant.
Roy L. Beach, Winter Park, pro se.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Roy L. Beach. We have jurisdiction. Art. V, § 15, Fla. Const.
The Bar filed a complaint against Beach in December 1995 alleging that Beach combined an insurance fraud with a "pyramid" scheme to market a sales plan that was both dishonest and illegal.[1] Circuit Judge Robert Young was appointed referee and hearings were held in October 1996. The referee entered his final report on March 18, 1997, detailing factual findings as to guilt and making recommendations as to discipline for the rule violations charged in the Bar's complaint.

FACTS
The referee's report reveals the following facts and determinations as to guilt. In August of 1993, respondent drafted and filed the articles of incorporation for American Family Benefits Group, Incorporated (AFBG), and served as AFBG's vice president, director and registered agent. The corporation was located in his law office in Orlando. Three others participated with respondent in forming the company and in its daily operations. The AFBG benefits program was set up to offer a participating new member a "free $70,000 life insurance policy," if the new member would allow AFBG to take out five $70,000 universal life insurance policies for the member. One policy was given to the member and the remaining four were owned by AFBG. AFBG then would immediately pledge the entire face amount of the four unpaid policies as collateral for a loan. Approximately thirty percent of the face value of the remaining policies, or $84,000, would be available to purchase an annuity to pay the premiums on all five policies as they became due and also pay "upline compensation" to the sponsoring AFBG member who recruited the new member for enrollment in *659 the AFBG program. In addition, AFBG would buy a $5,000 certificate of deposit to secure a credit card for the new member. Finally, the remainder of the loan proceeds would pay AFBG and cover the $99 membership fee for new members for whom it had been waived initially.
AFBG also offered members other benefits, including non-qualifying mortgages, car rentals, a long distance telephone program, a travel program, and a discount catalog sales program. These benefits, however, were not tied to a member's purchase of insurance and are not part of the allegations of wrongdoing in this case. Nevertheless, while access to these other benefits was not contingent upon the purchase of life insurance, evidence presented before the referee established that sponsoring members received upline compensation for a new member's enrollment in the life insurance package at a substantially greater rate (300 times greater) than when a new member only used AFBG's other benefit programs. Response to AFBG's promotions was overwhelming. Over 100,000 applications were received, and at one point the postal authorities assigned respondent's small office its own nine-digit zip code.
Respondent was actively involved in the formation, operation and promotion of AFBG. In addition to being an officer and director of the corporation, he served as counsel, checking the insurance code to gauge the AFBG program's compliance with it. Respondent also consulted a multilevel marketing attorney in another state for advice, drafted or approved some of AFBG's promotional materials, and represented AFBG in various regulatory proceedings.
The Bar contends that Beach's activities in connection with AFBG violated several provisions of the insurance code and therefore also constitute violations of the Rules Regulating the Florida Bar. Specifically, the Bar contends that Beach violated rule 3-4.3 by committing an act that is unlawful or contrary to honesty and justice; rule 4-8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and rule 4-8.4(d) by engaging in conduct prejudicial to the administration of justice. The referee found that respondent's actions violated section 626.9521, Florida Statutes (1995), proscribing "unfair method of competition or an unfair or deceptive act or practice involving the business of insurance," id., and several provisions of section 626.9541, which generally proscribes falsity in advertising and other publications, misrepresentations in solicitations (known as "twisting" in the industry), making unlawful rebates, and offering free insurance. The referee found:
8. While it is clear that the insurance code was violated in several material respects, it does not follow, ipso facto, that the violations constitute dishonesty, fraud, misrepresentation or deceit. An individual analysis is required.
9. The Florida Bar's Complaint incorporates the Department of Insurance Immediate Final Order wherein it is alleged that the AFBG and consequently Respondent, violated certain provisions of the insurance code, to wit: § 626.9521 and §§ 626.9541(1) a, b, e, h, l, and n of Florida Statutes, 1995. The first section proscribes "unfair competition or an unfair or deceptive act or practice involving the business of insurance." The second sections generally proscribe falsity in advertising and other publications, misrepresentations in solicitations (known as "twisting" in the industry), making unlawful rebates, and offering free insurance.
10. The Respondent is guilty of violating several of the foregoing sections of Chapter 626, Florida Statutes, 1995:
A. The record is replete with offers of "free insurance."
B. There never was [a]n insurance company or underwriter ready and willing to write these policies. Claiming the insurance to be available was false and misleading. However, clear and convincing evidence that Respondent made these false statements with knowledge of their falsity is lacking.

C. There never was a bank ready and willing to extend credit on the "face value" of these unfunded insurance policies. Claiming that insurance was available, was false and misleading to the public. Moreover, no such funding was possible on the *660 face amount of the insurance policies because they would have had no cash value.
(Record references omitted). As noted by the referee, the record is replete with offers by AFBG of "free insurance," and other evidence established that there never was an insurance company or underwriter ready and willing to write the policies advertised; nor a bank willing to extend credit on the "face value" of these unfunded policies. Thus, the referee's finding that AFBG's and respondent's claims that the insurance was available were false and misleading is supported by the evidence.
However, as noted in his report, the referee did not find clear and convincing evidence to establish that respondent had made these claims with knowledge of their falsity. Thus, the referee recommended that Beach be found guilty of violating rule 3-4.3 because he committed acts as a lawyer that were contrary to honesty and justice by his reckless disregard for the truth. On the other hand, the referee recommended that respondent be found not guilty of violating rules 4-8.4(c) and (d) because the evidence did not show clearly and convincingly that respondent engaged in conduct involving willful dishonesty.[2]
As to the appropriate discipline, the referee recommended that respondent be suspended from the practice of law for a period of three years and thereafter until proof of rehabilitation is presented. While recognizing that the applicable discipline standards generally call for a less severe sanction for the violation found, the referee concluded that the seriousness of the potential harm to the public from respondent's misconduct, and his significant disciplinary history involving two prior suspensions from the practice of law warranted a more severe sanction here. The referee further noted that disbarment would have been appropriate in this case had there been sufficient evidence to show that Beach was guilty of more than a reckless disregard for the truth.

ANALYSIS
Initially, Beach contends that because the Bar's complaint alleged that he had engaged in a willful and knowing misrepresentation, and not that he recklessly disregarded the truth, his rights to due process were violated as he was not provided with sufficient notice of the specific charges against which he would have to defend himself. Although the Bar fails to address respondent's argument, we find that it is without merit. Beach was clearly notified through the Bar's complaint that he was charged with violating rules 3-4.3, and 4-8.4(c) and (d). Moreover, paragraphs three and four of the Bar's complaint specifically allege that:
In or around January, 1993, American Family Benefits Group, Incorporated ... had engaged in or was preparing to engage in unfair deceptive acts or practices, or unfair methods of competition, involving the business of insurance throughout Florida using a complex multilevel marketing scheme combining life insurance, assignment of life insurance policies, loans against life insurance policies, credit cards, certificates of deposit and other alleged benefits.
Roy L. Beach, the respondent, was at all times material, a shareholder, officer or executive vice president of AFBG.
Based on the specificity of the Bar's complaint, we find that respondent's reckless disregard for the truth referenced by the referee in his report was clearly within the scope of the bar's accusations and respondent was notified of the nature and extent of the charges pending against him.
Next, this Court must consider Beach's claim that the referee's findings of fact and recommendations of guilt are erroneous. A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986). If the referee's findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992). The party contending that the referee's findings of fact and conclusions *661 as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
We find that the referee's findings of fact and recommendations of guilt are supported by the record as demonstrated above, and that Beach has not carried his burden in showing otherwise. We approve the referee's findings of fact and conclude that Beach violated rule 3-4.3 of the Rules Regulating the Florida Bar.

DISCIPLINE
The final issue this Court must address is the appropriate discipline. The referee recommended a three-year suspension requiring proof of rehabilitation prior to respondent's reinstatement to practice law, as well as payment of costs of the disciplinary proceedings. While a referee's recommendation for discipline is persuasive, this Court has the ultimate responsibility to determine the appropriate sanction. Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994). A bar disciplinary action must serve three purposes: the judgment must be fair to society, it must be fair to the attorney, and it must be severe enough to deter other attorneys from similar misconduct. Florida Bar v. Lawless, 640 So.2d 1098, 1100 (Fla.1994).
Unfortunately, this case is simply the most recent incident in respondent's history of serious ethical misconduct. The referee specifically noted in his report respondent's past disciplinary record. In 1992, respondent was suspended from the practice of law for twenty-eight days for trust accounting violations and a conflict of interest. See Florida Bar v. Beach, 637 So.2d 237 (Fla.1994) (table report of unpublished order). Just last year, in 1996, respondent again was suspended, this time for ninety days, for assisting in the unauthorized practice of law and improper fee splitting. See Florida Bar v. Beach, 675 So.2d 106 (Fla.1996). These offenses constitute aggravating factors that the referee properly considered in his report. See Fla. Stds. Imposing Law. Sancs. 9.22(a) (prior disciplinary offenses) (c) (a pattern of misconduct), (d) (multiple offenses).
Beach's offense here is further aggravated by the fact that he possessed a selfish motive; the victim, the unsuspecting general public, was particularly vulnerable to harm; and Beach has substantial experience in the practice of law.[3]See Fla. Stds. Imposing Law. Sancs. 9.22(b), (h), and (i). Based on these considerations and the observations in the referee's report, we can find no basis for deviating from the referee's recommended three-year suspension with proof of rehabilitation prior to reinstatement, and payment of costs.
Roy L. Beach is hereby suspended from the practice of law in this state for three years. The suspension will be effective thirty days from the filing of this opinion so that respondent can close out his practice and protect the interests of existing clients. If Beach notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Beach shall accept no new business from the date this opinion is published until the suspension is completed. Judgment is entered against Roy L. Beach for costs in the amount of $3,859.40 for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] This case also involves cross-agency investigations in both the Attorney General's Unfair and Deceptive Trade Practices Division and the Fraud Division of the Department of Insurance. Our inquiry is limited solely to the allegations of ethical misconduct.
[2] The Bar does not appeal the referee's not guilty recommendations.
[3] Respondent is a 43-year-old sole practitioner admitted to practice in Florida on October 31, 1980.