718 So.2d 788 (1998)
THE FLORIDA BAR, Complainant,
v.
Cyrus Alan COX, Respondent.
Nos. 87536, 88381, 88888 and 89010.
Supreme Court of Florida.
October 1, 1998.
*789 John F. Harkness, Jr., Executive Director, and John A. Boggs, Staff Counsel, Tallahassee; and Rose Ann DiGangi-Schneider and Eric M. Turner, Bar Counsel, Orlando, for Complainant.
Scott K. Tozian of Smith and Tozian, P.A., Tampa, for Respondent.
PER CURIAM.
Cyrus Alan Cox petitions this Court for review of the referee's findings and recommendations in these consolidated Florida Bar disciplinary proceedings. The Florida Bar cross-petitions for review of the referee's recommendation to suspend Cox. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed, we approve the referee's findings and recommendations as to guilt, but disapprove the referee's recommended discipline and disbar Cox.
The Florida Bar filed four complaints against Cox, alleging a total of fifty-nine violations of the Rules Regulating the Florida Bar. A referee was appointed and disciplinary hearings were conducted. The referee recommended that Cox be found guilty of twenty-seven rule violations. We consolidate the individual cases for the purposes of our review.

FINDINGS AND RECOMMENDATIONS OF REFEREE

Case No. 87,536
Cox associated with the law firm of Greenspoon, Marder, Hirschfeld and Rafkin (GMHR) on February 1, 1994. Cox agreed to bring his clients from his solo practice to GMHR and the firm agreed to allow Cox to collect his outstanding accounts receivable. On January 5, 1995, following a dispute with Michael Marder of GMHR, Cox's employment was terminated. GMHR subsequently mailed a letter of complaint against Cox to the Bar, and the Bar, following a probable cause determination, filed an eight-count complaint against Cox.
The report of the referee reveals the following facts regarding case number 87,536. As to count I, Cox represented Isabelle Wimberly in various matters. Wimberly owed fees for work performed by Cox both before and after he joined GMHR. Cox received a payment from Wimberly, and both Cox and GMHR claimed the fee. Marder testified that GMHR's policy was to apply fees received to the oldest outstanding invoice. The debt Wimberly owed to Cox predated the debt she owed to GMHR.
As to count II, in November 1994, Cox advised Marder that he planned to meet with one Patrick Smythe. Marder instructed Cox not to establish a professional relationship *790 with Smythe due to a potential conflict of interest. Marder later discovered that Cox opened a bank account entitled "Cyrus Cox, Escrow Agent for Patrick Smythe." Cox and Smythe informed the referee that Cox did not represent Smythe. Cox further testified that the escrow account held the funds of his client, Jim Ballweg, for the purchase of property owned by Smythe. Ballweg confirmed Cox's testimony.
As to count III, Lourdes Zaczac owed fees for work performed by Cox both before and after he joined GMHR. Cox received two payments from Zaczac, and both Cox and GMHR claimed the money. Zaczac submitted an affidavit to the referee stating that her first payment was for services rendered by Cox before he joined GMHR and her second payment was for costs related to a transaction Cox handled for her.
Count IV involved Cox's representation of Southern Title and Abstract, Inc., and its owner, Millie Crenshaw. Southern Title provided title services to Bishop Williams, another client of Cox's. Southern Title deducted the amount of a debt owed to it by Williams for title services from its outstanding debt to GMHR. The deduction was not performed at Cox's direction.
As to count V, Cox's brother was a partner in the out-of-state law firm of Cox, Buchanan and Padmore (CBP). Cox referred various clients of GMHR to CBP. Cox referred two clients because GMHR lacked the required legal expertise. A third client was referred by Cox after a GMHR partner instructed him to withdraw from representing the client. Cox collected no referral fees and his employment agreement with GMHR did not prevent him from referring clients.
The findings of fact regarding count V also reveal that, while he was associated with GMHR, Cox was employed in a salaried, nonlegal position by ALPS Marketing. Cox's employment agreement with GMHR allegedly prohibited dual employment. Cox remitted fees to GMHR for the legal work he performed for ALPS Marketing.
As to count VI, Cox and Ballweg were co-owners of Action Loss Prevention Specialists, Inc. (ALPS), and Cox served as the company's general counsel. Ballweg obtained a line of credit on behalf of ALPS from Norbert Jann for the purpose of forming two corporations, ALPS Marketing and ALPS Protective Services. On July 14, 1994, Cox wrote Jann, on GMHR letterhead, to offer his legal services in drafting the line-of-credit agreement. Cox did not reveal in the letter that he represented Ballweg or that he was the general counsel of ALPS. The agreement drafted by Cox granted Cox access to funds for the purpose of paying startup costs, operating expenses, and attorney's fees. On July 25, 1994, Jann wired $150,000 to Cox's Barnett Bank trust account. Cox began issuing checks against the funds before they were deposited. Cox's check register failed to note the date the funds were received. Cox issued numerous checks for purposes not authorized by the loan agreement.
On November 18, 1994, Jann wired approximately $200,000 to Cox's NationsBank trust account. Although the funds constituted a second loan from Jann to Ballweg under the line-of-credit agreement, the funds were not transferred to Cox's Barnett Bank account. Numerous checks were issued from the NationsBank account for unauthorized purposes. When GMHR inquired about the funds deposited in Cox's account, Cox informed the partners that the money was for legal fees he had earned while he was a sole practitioner. Cox subsequently told the firm that the funds were a loan from Jann.
The check stubs for the two trust accounts frequently failed to reflect the clients' or payees' identities, the date of disbursement, or the account balance. The deposit records failed to reflect the client matters and deposit dates. The funds received from Jann were commingled with other clients' funds. At various times, each account had a negative balance and checks were returned due to insufficient funds. Finally, Cox never provided Jann with a detailed accounting of the disbursement of his funds.
Count VII involves Cox's representation of John Meek in a tax matter. Cox testified that Meek was an old friend and that he loaned Meek money, interest free, to pay his tax indebtedness. The terms of the loan were not disclosed to Meek in writing and *791 Meek did not provide written consent to the loan.
Count VIII involves Cox's representation of William Costley in a real estate transaction. During this representation, substantial confusion arose as to what Cox had done or would do on Costley's behalf. Cox admitted that he could have been more prompt in his dealings with Costley. Costley requested a refund of his retainer, but Cox declined to refund the money because he believed he had earned it.
Based on the facts set out above, the referee recommended that Cox be found guilty of sixteen rule violations.[1] The referee further recommended that Cox be suspended from the practice of law for thirty months and subsequently placed on probation for three years.

Case No. 88,381
A second complaint against Cox was filed by the Bar on July 2, 1996, and the case was consolidated with case number 87,536. Regarding case number 88,381, the referee's report reveals that Cox prepared a will at the direction of Martha Skinner for her father, Charles Goethe. The signing of the will was not performed before a notary. Cox subsequently had the will notarized at a different location from where the signing ceremony occurred. Moreover, Skinner testified that Cox was not present when the will was signed. Cox testified otherwise. The referee recommended that Cox be found guilty of three rule violations[2] and suspended for one year, to run concurrent with the suspension in case number 87,537.

Case No. 88,888
A third complaint was filed against Cox by the Bar on September 6, 1996. The referee's report regarding case number 88,888 relates that Cox was hired by Dr. Jah to assist him in the collection of $40,500,000 allegedly owed to Jah by the Nigerian government. Jah promised to pay Cox a fee of thirty percent of the funds, if collected. In his effort to obtain the money, Cox submitted several documents with false information to an entity known as the Royal Clearing House. These documents included a back-dated letter with an application for payment; a false certificate of incorporation indicating that Cyrus A. Cox, Esq., was incorporated in Nigeria in 1980 (Cox was not a law school graduate in 1980); and a false income tax certificate. Cox testified that he was the target of a fraudulent scheme and that he submitted the false documents in an attempt to discover the perpetrators of the scheme. In response to Cox's actions, the referee recommended that Cox be found guilty of four rule violations[3] and suspended for ninety days, to run consecutive to any other disciplinary measures imposed.

Case No. 89,010
A fourth complaint was filed against Cox by the Bar and the case was consolidated with case number 88,888. The referee's report reveals that case number 89,010 involved Cox's representation of Jeffery Daniels, Inc., in a contract dispute. Cox informed Timothy Jittu of Jeffery Daniels, Inc., that he would file suit on behalf of *792 the company in October 1994. Jittu requested a copy of the complaint, but Cox did not provide it. Cox also told Jittu he was scheduling depositions for November. Cox falsely told Jittu in November 1994 that he had filed the complaint in October. In December 1994, Jittu called Cox to inform him that Jeffery Daniels, Inc., had received a settlement check for part of the amount claimed as damages. Cox erroneously informed Jittu that the check could be accepted "under protest" and the cause of action would remain viable. Cox failed to research this issue.
Jittu eventually learned from a partner of GMHR that Cox had not filed a complaint. Cox testified that, at the time he spoke with Jittu in November, he believed that he had filed a complaint in October. However, Cox never attempted to obtain a default against the opposing party for failing to respond to the complaint. Due to Cox's inaction, Jittu hired another attorney on March 9, 1995, and left messages with Cox's office that his services were no longer desired. Cox subsequently filed a complaint on Jeffery Daniels' behalf on March 12, 1995, but failed to inform Jittu of this action. In response to these facts, the referee recommended that Cox be found guilty of four rule violations[4] and suspended for ninety days, again to run consecutively to any other discipline imposed.
With respect to the four cases, the referee recommended that Cox be suspended for a total of three years and placed on probation for three years. In making his disciplinary recommendations, the referee considered Cox's personal history and prior disciplinary conviction and punishment in Florida Bar v. Cox, 655 So.2d 1122 (Fla.1995)(thirty-day suspension for dishonesty and misrepresentation toward law firm and clients). The referee also recommended that costs in the total amount of $15,497.24 be taxed against Cox.

ANALYSIS AS TO GUILT
Cox raises a total of five claims regarding the referee's findings of guilt. In its cross-petition for review, the Bar raises one claim regarding the referee's recommendation that Cox be found not guilty of certain alleged violations.
Four of Cox's claims challenge the sufficiency of the evidence to support the referee's findings of guilt. A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Beach, 699 So.2d 657, 660 (Fla.1997). If the referee's findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. Florida Bar v. Bustamante, 662 So.2d 687, 689 (Fla.1995). The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
Cox's first claim pertains to count VI of case number 87,536. Cox argues that the evidence is insufficient to support the referee's finding him guilty of violating rules 4-1.7(b), 4-1.8(a), 4-4.1(a), 4-8.4(c), and 5-1.1(g). We disagree because the record reveals competent, substantial evidence to support the findings of the referee. With respect to rule 4-1.7(b), Cox represented Jann in formalizing the terms of the line-of-credit agreement between Jann, ALPS and Ballweg. However, Cox failed to disclose to Jann that he represented Ballweg and that he was the general counsel of ALPS. Thus, Cox's independent professional judgment in Jann's representation was limited by his own interests and the responsibilities he owed to another client, and Cox failed to consult Jann regarding the conflict of interest. Rule 4-1.8(a) was violated because the evidence reveals that Cox, as co-owner and general counsel of ALPS, entered a business transaction with his clients, Jann and Ballweg, without receiving their written consent thereto. *793 Rules 4-4.1(a) and 4-8.4(c) were violated because the evidence demonstrates that Cox misrepresented to GMHR that the funds wired to Cox's GMHR trust account by Jann were "personal funds" that he had earned before associating with GMHR. Cox also misrepresented to Marder that he had paid income taxes on the funds. Finally, rule 5-1.1(g) was violated because the evidence reveals that Cox made various disbursements against uncollected funds because he issued checks against the $150,000 loan from Jann prior to the date that the loan was deposited in his trust account. In addition, the funds were occasionally used for purposes not authorized by the line-of-credit agreement.
In his second claim, Cox argues that the evidence does not support the referee's findings of guilt relating to rules 3-4.3, 4-8.4(c), and 4-8.4(d) in case number 88,381. These rules proscribe conduct involving dishonesty or misrepresentation and conduct that is prejudicial to the administration of justice. Such conduct is evidenced by the undisputed fact that Cox obtained an improper notarization of a will after failing to have his client sign his will before a notary. Moreover, the evidence supports the referee's finding that Cox was not present when the will was executed.
In his third claim, Cox argues that the evidence does not sufficiently support the referee's findings of guilt as to rules 3-4.3, 4-4.1, 4-8.4(c), and 4-8.4(d) in case number 88,888. Again, we disagree. The record demonstrates that Cox created, signed, and mailed various false documents in an effort to earn an extraordinary attorney's fee. Moreover, upon reviewing the record we find that the referee properly determined that Cox's explanation that he falsified documents to discover the perpetrators of a fraudulent scheme lacked credibility.
In his fourth claim, Cox argues that the evidence does not support the referee's finding of guilt with respect to rules 4-1.4 and 4-8.4(c) in case number 89,010. Cox further asserts that he cannot be found guilty of violating rule 4-1.4 because the Bar failed to charge him with such a violation. We agree with Cox that a violation of rule 4-1.4 was not expressly charged in the Bar's complaint. However, we find that the factual allegations in the complaint placed Cox on notice that such a violation was at issue. See Florida Bar v. Vaughn, 608 So.2d 18, 20-21 (Fla. 1992). In addition, the evidence supports a finding of guilt regarding rule 4-1.4 because Cox failed to keep Jittu informed about the status of his case following various requests by Jittu for such information. As to rule 4-8.4(c), Cox testified that in November 1994 he told Jittu that he had filed a complaint on Jittu's behalf in October. However, the complaint was not filed by Cox until March 1995. Cox's explanation that he thought he had filed the complaint in October is not credible, because a reasonable attorney, upon noticing that a response was not filed to the complaint, would have sought a default against the opposing party.
In his final claim regarding the referee's findings of guilt, Cox argues that his right to due process was violated because the Board of Governors of The Florida Bar failed to follow the procedures under rule 3-7.5 for submitting case number 89,010 to the referee. This claim is without merit. The grievance committee appointed to investigate the complaint against Cox voted to find no probable cause to proceed. The grievance committee issued a report of its finding, and forwarded the matter to the designated reviewer. The designated reviewer disagreed with the finding of the grievance committee, and made a recommendation to the disciplinary review committee to proceed against Cox. The disciplinary review committee made its recommendation to the Board of Governors, and the board, by majority vote, entered a finding of probable cause against Cox. Cox was then notified of the board's finding. The procedures followed by the Bar in submitting case number 89,010 to the referee did not violate rule 3-7.5.
In its cross-petition for review, the Bar claims that the record supports a finding that Cox violated rules 4-1.7(b) and 4-1.8(a) in count VII of case number 87,536. Based on our review of the record, the evidence is insufficient to find Cox guilty of violating either rule. Cox and Meek were friends prior to the time that Meek retained Cox to represent him in a tax matter. Cox loaned money to Meek to enable Meek to pay a tax *794 debt. The loan was interest free. The evidence reveals that Cox did not believe this loan would adversely impact his representation of Meek and that Meek consented to the loan after consultation. Thus, rule 4-1.7(a) was not violated. As to rule 4-1.8(a), the referee found that Cox loaned Meek money as his friend, not as his attorney. The record sufficiently supports the referee's finding and we will not substitute our judgment for that of the referee.

ANALYSIS AS TO DISCIPLINE
Cox and the Bar challenge the discipline recommended by the referee. Cox argues that a discipline ranging from a public reprimand to a ninety-day suspension is more appropriate than the recommended suspensions. The Bar argues that disbarment, rather than suspension, is the appropriate discipline, given the serious and cumulative nature of the misconduct and Cox's prior discipline.
A bar disciplinary action must serve three purposes: (1) the judgment must be fair to society; (2) it must be fair to the attorney; and (3) it must be severe enough to deter other attorneys from similar misconduct. Florida Bar v. Lawless, 640 So.2d 1098, 1100 (Fla.1994). While a referee's recommendation for discipline is persuasive, this Court has the ultimate responsibility to determine the appropriate sanction. Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla.1994). We agree with the Bar that the circumstances of these consolidated cases, coupled with Cox's prior discipline, warrant disbarment rather that the referee's recommended three-year suspension. Cox has been found guilty of twenty-seven violations of the Rules Regulating the Florida Bar in four separate cases. Cox's misconduct with respect to several of these violations involved dishonesty and misrepresentation. What in our view justifies disbarment is that Cox has previously been disciplined for dishonesty and misrepresentation to his law firm and clients. Florida Bar v. Cox, 655 So.2d 1122 (Fla. 1995). Disbarment is appropriate where, as here, there is a pattern of misconduct and history of discipline. See, e.g., Florida Bar v. Maynard, 672 So.2d 530 (Fla.1996)(holding that disbarment is appropriate where attorney made false statement to a tribunal and engaged in conduct involving fraud, dishonesty and misrepresentation); Florida Bar v. Knowles, 572 So.2d 1373 (Fla.1991) (attorney's neglect and dishonesty constituted cumulative misconduct which warranted disbarment); Florida Bar v. Shanzer, 572 So.2d 1382, 1383 (Fla.1991) (disbarment presumed to be appropriate punishment where lawyer has misused client funds); Florida Bar v. Mims, 532 So.2d 671 (Fla.1988) (holding that misappropriation of client funds, commingling, and past disciplinary history warranted disbarment).
In his final claim, Cox argues that he should not be liable for the total costs in case number 87,536 because he was partially vindicated. We disagree. The assessment of costs in a disciplinary proceeding is within the discretion of the referee, and this Court will not reverse the assessment in the absence of an abuse of discretion. Florida Bar v. Carr, 574 So.2d 59, 59 (Fla.1990). The record in this case does not reveal the assessed costs to be unnecessary, excessive, or improperly authenticated. Thus, there was no abuse of discretion. In addition, but for Cox's misconduct, there would have been no complaint filed against him and, therefore, no costs. See Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
Cyrus Alan Cox is hereby disbarred. The disbarment will be effective thirty days from the filing of this opinion so that Cox can close out his practice and protect the interests of existing clients. If Cox notifies this court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Cox shall accept no new business from the date this opinion is filed. We enter judgment against Cox in favor of The Florida Bar for costs in the amount of $15,497.24, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] The referee recommended that Cox be found guilty of violating the following rules:

Count II: 4-1.15(d)(compliance with trust accounting rules).
Count VI: 4-1.7(b)(duty to avoid limitation on independent professional judgment); 4-1.8(a)(acquiring adverse interest to client); 4-1.15(a)(clients' funds to be held in trust); 4-1.15(d)(compliance with trust accounting rules); 4-4.1(a)(false statement of material fact or law to third person); 4-8.4(c)(conduct involving dishonesty); 5-1.1(a)(nature of money or property entrusted to attorney); 5-1.1(c)(trust accounts as official records); 5-1.1(d)(minimum trust accounting records); 5-1.1(g)(disbursement against uncollected funds); 5-1.2(b)(minimum trust accounting records); and 5-1.2(c)(minimum trust accounting procedures).
Count VIII: 4-1.3(diligence); 4-1.4(a)(informing client of status of representation); and 4-1.4(b)(duty to explain matters to client).
[2] The referee recommended Cox be found guilty of violating rules 3-4.3(conduct contrary to honesty and justice), 4-8.4(c)(conduct involving dishonesty, fraud, deceit or misrepresentation), and 4-8.4(d)(conduct prejudicial to the administration of justice).
[3] The referee recommended that Cox be found guilty of violating rules 3-4.3(conduct contrary to honesty and justice), 4-4.1(truthfulness in statements to others), 4-8.4(c)(conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-8.4(d)(conduct prejudicial to the administration of justice).
[4] The referee recommended that Cox be found guilty of violating rules 4-1.1(competence), 4-1.3(diligence), 4-1.4(duty to communicate with client), and 4-8.4(c)(conduct involving dishonesty, fraud, deceit, or misrepresentation).