PER CURIAM.
We have for review a referee’s report regarding alleged ethical misconduct by Andrew James O’Connor, an inactive member of The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.

Procedural Background

The Florida Bar filed a complaint charging O’Connor with violating Rules Regulating the Florida Bar 4-3.3(a)(l) (making a false statement of material fact or law to a tribunal); 4-8.1(a) (knowingly making a false statement of material fact); 4-8.4(a) (violating the Rules of Professional Conduct); and 4r-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). These charges arose after O’Connor filed an application for a limited law license with the Supreme Court of New Mexico. Following a hearing, the referee issued findings of fact, conclusions of guilt, and a recommendation of discipline. The referee found that O’Connor, who is currently in the status of being inactive for incapacity not related to misconduct, knowingly made a material misrepresentation to the Supreme Court of New Mexico that he was a member in good standing of The Florida Bar and violated the rules with which he had been charged. The referee recommended disbarment. O’Connor seeks review here.
We approve the referee’s findings of fact and guilt, but disapprove the recommendation that O’Connor be disbarred. Instead, in our view this matter requires the imposition of a one-year period of disqualification to petition for reinstatement to membership in good standing. This one-year period shall commence on the date this opinion becomes final. After the expiration of one year, O’Connor may petition for reinstatement pursuant to the terms and conditions of Rule Regulating the Florida Bar 3-7.10 and as set forth more fully below.

Factual Background

The underlying facts, as found by the referee and as established by the documents introduced into evidence and O’Con-nor’s testimony during the hearing, established the following sequence of events: O’Connor was admitted to The Florida Bar on November 11, 1990. On April 21,1992, the Bar petitioned the Court to suspend O’Connor on an emergency basis. The Court granted the petition and suspended O’Connor on April 30, 1992. The order of this Court stated O’Connor was suspended “until further order of this Court.”
That same day, O’Connor was involved in an automobile accident which allegedly incapacitated him both mentally and physically. On June 24, 1992, the Court granted the Bar an extension of time in which to file the formal complaint against O’Connor. The Court’s order directed the Bar to file the complaint within sixty days of notification that O’Connor was able to participate in the proceedings.
Over one year later, on October 14,1993, O’Connor, through his attorney, filed a Notification of Ability to Participate and a Motion for Dissolution of Emergency Suspension. The Court denied the motion to dissolve the suspension on November 17, 1993. One month later, on December 15, 1993, O’Connor, again through his attorney, filed a Petition for Placement on the Inactive List for Incapacity Not Related to Misconduct, which the Court granted on January 27,1994.
The Bar sent O’Connor a copy of The Florida Bar Reinstatement Manual on February 28, 1995, apparently in response to an inquiry by O’Connor. On December 31, 1997, O’Connor contacted the Bar with regard to a return to active status. In *1117 October 2001, O’Connor filed a Petition for Removal of Inactive Status with the Bar. The Bar responded on October 31, 2001, by returning his petition and his check, along with another copy of The Florida Bar Reinstatement Manual. The cover letter advised that he was required to petition the Court for reinstatement pursuant to rule 3-7.10 and provided him the name and phone number of the person to contact if any questions arose. The first sentence in the sample Petition for Reinstatement included in the manual provided to O’Con-nor states: “(Respondent) ... respectfully files this petition for reinstatement to membership in good standing in The Florida Bar.” O’Connor never petitioned for reinstatement under rule 3-7.10.
O’Connor was apparently hired as an assistant public defender in New Mexico in July 2002. At that time there was no change in his Florida inactive status. On January 16, 2003, O’Connor filed an application for a limited law license -with the Supreme Court of New Mexico. O’Con-nor’s application stated that a certificate of good standing in Florida was attached. O’Connor attached only a copy of his Florida Bar card, front and back, which showed his status as “inactive,” but had not requested nor did he attach a certificate of good standing. The Supreme Court of New Mexico issued a limited license to O’Connor based on his representation that a certificate of good standing was attached, but revoked the license almost immediately when the discrepancy was discovered. The Supreme Court of New Mexico then notified The Florida Bar, which instituted these proceedings.
The referee found O’Connor knew he was not in good standing with The Florida Bar when he applied for a limited license in New Mexico, which conduct violated the rules set forth in the Bar’s complaint. The referee ultimately recommended that O’Connor be disbarred.

Analysis

O’Connor petitions for review of the referee’s findings of fact, conclusions of guilt, and recommendation of discipline. O’Con-nor argues that he was unaware his inactive status designation had the effect of placing him in the category of being “not in good standing” and, thus, he did not knowingly attempt to mislead the Supreme Court of New Mexico in his application for a limited license. This argument is, essentially, a challenge to the sufficiency of the evidence to support the referee’s findings that O’Connor knew that he was not a member in good standing when he filed the application and that O’Connor’s testimony to the contrary was not credible.

Findings of Fact

Finding facts and resolving conflicts in the evidence is the responsibility of the referee. See Fla. Bar v. Hooper, 509 So.2d 289, 290-91 (Fla.1987). To successfully challenge a referee’s findings before this Court, a respondent must demonstrate that there is no evidence in the record to support the referee’s findings or that the record evidence clearly contradicts the conclusions. See, e.g., Fla. Bar v. Elster, 770 So.2d 1184, 1185 (Fla.2000); Fla. Bar v. Carnearte, 733 So.2d 975, 977 (Fla.1999). The Court defers to the referee’s assessment and resolution of conflicting evidence because the referee is in the best position to judge the credibility of the witnesses. See Fla. Bar v. Batista, 846 So.2d 479 (Fla.2003).
O’Connor has failed to establish that there is no evidence in the record to support the referee’s findings or that the record evidence clearly contradicts the conclusions. He could not do so because there is competent, substantial evidence that O’Connor knew he was not in good standing. O’Connor communicated with *1118 the Bar on at least three occasions between the time he became inactive and the time he filed an application with the Supreme Court of New Mexico. On two of those occasions, the Bar provided him a manual that specifically informed him of the steps required to be returned to membership in good standing. The first sentence of the sample petition included in the manual he received is abundantly clear that only active members are members in good standing. Additionally, when the Bar denied his petition for reinstatement and returned his check, O’Connor was officially notified that there were additional procedures required if he desired a change in status to be returned to the category of a member in good standing.
O’Connor maintains that it was unfair for the Bar to charge him with ethical misconduct because the Bar never directly informed him that he was not “in good standing.” In conjunction with that, he argues that the Rules Regulating the Florida Bar are too vague and confusing to have provided him notice that his inactive status resulted in the status of “not in good standing.” We disagree with and reject both of these arguments.
Rule 1-3.2, titled “Membership classifications,” provides only three classifications of Bar members — members in good standing, conditionally admitted members, and inactive members. These classifications are clear and unambiguous. Subdivision (a) defines “members in good standing” as “only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent, inactive, or suspended members.” (Emphasis added.) O’Connor was inactive and had not paid annual membership fees or dues for the current year at the time he applied to the Supreme Court of New Mexico. He clearly did not fall within that membership “in good standing” classification, and O’Connor was most certainly aware of the underlying facts which produced that result.
Subdivision (c) defines “inactive” as “only those members who have properly elected to be classified as inactive in the manner elsewhere provided.” O’Connor petitioned the Court to be placed on the inactive list for incapacity not related to misconduct, which was granted. He “properly elected to be classified as inactive.” His argument that he did not know that the “inactive” category applied to him because he was “inactive for incapacity not related to misconduct” and not just “inactive” is not credible; the referee was justified in disbelieving him.
We next address O’Connor’s argument that the referee inappropriately allowed the Bar to introduce evidence of his 1992 emergency suspension at the hearing. We review a referee’s actions regarding the admissibility of evidence for abuse of discretion. See Fla. Bar v. Rotstein, 835 So.2d 241, 244 (Fla.2002). Applying that standard to the instant case, we conclude the referee did not abuse his discretion in allowing the Bar to introduce evidence of his emergency suspension. Previous disciplinary sanctions against a respondent are always relevant in Bar disciplinary proceedings because they are factors to be considered by the referee in making a recommendation of discipline to the Court. See Fla. Stds. Imposing Law. Sanes. 3.0, 8.0, 9.1, 9.21, 9.22(a)(c), 9.31, 9.32(a), (m). Although the events underlying O’Connor’s emergency suspension were never the subject of a formal hearing and, thus, never resulted in factual or guilt findings or the imposition of discipline, it was only O’Connor’s petition to be placed on inactive status which caused those proceedings to never occur. This is far different than a disciplinary proceeding *1119 which has proceeded to its conclusion and resulted in a finding of no misconduct. Furthermore, the fact that he was under emergency suspension in Florida immediately before he chose to become inactive should have given O’Connor more reason and incentive to fully clarify his classification in Florida before he represented himself to be a member in good standing to the Supreme Court of New Mexico.
We reject O’Connor’s argument that he was no longer under emergency suspension when he became inactive because more than sixty days had elapsed after he notified the Bar that he had recovered sufficiently to participate in the disciplinary proceedings. Simultaneously with his notice, O’Connor filed a motion to dissolve his emergency suspension. Under rule 3-5.2(e)(1), the filing of the motion to dissolve operated as an automatic stay of the proceedings and time limits. Rule 3-5.2(e)(4) provided the Bar sixty days after the Court denied the motion to dissolve in which to file the formal complaint, if the complaint was not filed prior to the motion. The sixtieth day after the Court denied O’Connor’s motion to dissolve was January 16, 1994. This date fell between the date O’Connor filed his petition to be placed on the inactive list and the date the Court granted his petition.
The issue, then, became the status of O’Connor’s emergency suspension when the deadline passed without the Bar filing a formal complaint. This is an issue of first impression. We hold the suspension was not automatically dissolved when the sixtieth day passed. The sixty-day time limit in rule 3-5.2(d) was not self-executing. The passing of the time limit would have given O’Connor grounds for a motion to dismiss, but would not have dissolved the emergency suspension.
Several factors lead us to arrive at this conclusion. First, the applicable rule says nothing with regard to the effect of a failure by. the Bar to file a formal complaint within sixty days. Rule 3-7.11(a) provides, in pertinent part: “Except as provided herein, the time intervals required are directory only and are not jurisdictional.” Second, cases in which we have dismissed Bar disciplinary proceedings for undue delay by the Bar under rule 3-7.16 or its predecessor rules were initiated by a motion to dismiss or a motion to cease and desist. See, e.g., Fla. Bar v. Walter, 784 So.2d 1085 (Fla.2001) (dismissing Bar disciplinary proceeding where there was a seven-year interim between the alleged misconduct and the complaint); see also Murrell v. Fla. Bar, 122 So.2d 169 (Fla.1960) (granting attorney’s motion to cease and desist for five-year delay); cf. Fla. Bar v. Marks, 492 So.2d 1327, 1328 (Fla.1986) (denying motion to dismiss and holding two-year delay was not unreasonable). As the applicable time period under rule 3-7.16 is six years and, yet, is not self-executing, it would be inconsistent and illogical to make a sixty-day time limit self-executing, especially where the attorney misconduct alleged is egregious enough to warrant emergency suspension.
Finally, Florida Rule of Civil Procedure 1.420(e), which governs dismissal of civil claims for failure to prosecute, has been held to require some affirmative action and to not be self-executing. See, e.g., Pollock v. Pollack, 116 So.2d 761 (Fla.1959); Mitchell v. Coker Fuel, Inc., 511 So.2d 344 (Fla. 2d DCA 1987); City of Miami v. Katz, 498 So.2d 635 (Fla. 3d DCA 1986); Peterzell v. James Urbach, M.D., P.A., 497 So.2d 921 (Fla. 5th DCA 1986); Barnes v. Escambia County Employees Credit Union, 488 So.2d 879 (Fla. 1st DCA 1986); Fla. E. Coast Ry. Co. v. Russell, 398 So.2d 949 (Fla. 4th DCA 1981).
However, we cannot agree with the Bar that O’Connor is still under emergen *1120 cy suspension, although inactive. Although he was still under emergency suspension after the sixty-day deadline passed, he became inactive due to incapacity not related to misconduct on January 27, 1994, when this Court granted his petition to become inactive. The change to inactive status dissolved the suspension.

Recommendation of Discipline

The referee recommended that O’Connor be disbarred. Based on this record we understand the difficult circumstances with which the referee was faced, but we find that we cannot approve this recommendation of the most severe sanction. Unlike the referee’s findings of fact and conclusions as to guilt, the determination of the appropriate discipline is peculiarly within the province of this Court’s authority. See Fla. Bar v. Miller, 863 So.2d 231, 235 (Fla.2003); Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, 15, Fla. Const. Disbarment is an extreme form of discipline and is reserved for the most egregious misconduct. See Fla. Bar v. Summers, 728 So.2d 739, 742 (Fla.1999); see also Fla. Bar v. Cox, 718 So.2d 788, 794 (Fla.1998) (holding disbarment is appropriate where there is a pattern of misconduct and a history of discipline); Fla. Bar v. Kassier, 711 So.2d 515, 517 (Fla.1998) (holding disbarment is an extreme sanction that should be imposed only in those rare cases where rehabilitation is highly improbable).
While O’Connor’s misconduct in knowingly making a material misrepresentation of fact to the Supreme Court of New Mexico is indeed very serious, there are two factual circumstances specific to this case which lead us to conclude that disbarment is too extreme here. First, O’Con-nor had very little experience in the practice of law at the time he was placed on emergency suspension. Second, he has been inactive for over a decade.
If the factual circumstances had been different, i.e., if O’Connor had been an active member of The Florida Bar at the time he made a material misrepresentation to the Supreme Court of New Mexico in an application for admission there, a one-year suspension would have been an appropriate sanction. We cannot, however, suspend O’Connor because he is not an active member. We therefore do the closest thing and impose a one-year period of disqualification instead.

Conclusion

We approve the referee’s findings of fact and conclusions of guilt. We disapprove the recommendation of disbarment and impose a one-year period of disqualification instead. After one year from the date this decision becomes final, O’Connor may petition for reinstatement to membership in good standing in The Florida Bar under rule 3-7.10. As outlined in that rule, O’Connor must file the original and one copy of a verified petition for reinstatement with this Court and serve a copy of the petition on Bar Staff Counsel. The petition shall include the information required by rule. O’Connor shall attach to the petition certified copies of all criminal and civil judgments; disciplinary judgments; income tax returns together with consents to secure original returns; financial statements; statements of restitution of any funds that were the subject matter of any disciplinary proceedings; copies of all pleadings in the matter leading to his placement on the inactive list and all such other documents as may be reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law. O’Connor shall further attach proof that he has paid a deposit to The Florida Bar in such amount as the Board of Governors shall prescribe to en *1121 sure payment of reasonable costs of the proceedings as set forth in the rule at the time he files the petition. He shall comply with all rules in effect at that time.
At any future hearing before the referee on reinstatement, conducted when and if O’Connor petitions for reinstatement, O’Connor shall bear the burden of proving his rehabilitation by clear and convincing evidence. His proof of rehabilitation must address both the mental and physical disabilities from which he was suffering at the time of his petition to be placed on inactive status for incapacity not related to misconduct and his misconduct in this case. O’Connor is urged to thoroughly familiarize himself with rule 3-7.10 and all other applicable rules prior to initiating reinstatement proceedings.
As O’Connor is currently inactive, the one-year period of disqualification from reinstatement is effective immediately on the date this opinion becomes final.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Andrew James O’Connor in the amount of $2,123.35, for which sum let execution issue.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
QUINCE, J., concurs in part and dissents in part.